# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 4291 | DATE | 4/2/2001 |
| CASE TITLE | The Chicago Reader et al. Vs. Michael Sheahan et al. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion for summary judgment on count I is denied, and plaintiffs' motion for summary judgment on count I is granted. Because we grant plaintiffs' requested relief under count I, their motion to amend is denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | APR 0 3 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail A 450 form. | CO-7 FILED FOR DOCKETING 01 APR -2 PM 2:19 | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| WAH | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | | |
|---|---|---|---|
| THE CHICAGO READER, et al., | ) | | |
| | ) | | |
| Plaintiffs, | ) | | |
| | ) | | |
| vs. | ) | No. 99 C 4291 | |
| | ) | | |
| MICHAEL SHEAHAN, et al., | ) | | |
| | ) | | |
| Defendants. | ) | | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Chicago Reader, Inc. (Reader) and Tori Marlan filed this Section 1983 suit against Cook County Sheriff Michael F. Sheahan, Press Officer William Cunningham, Cook County Jail Director Ernesto Velasco and Public Information Officer Joan Stockmal. The original complaint alleged that defendants violated plaintiffs' First Amendment rights by refusing Marlan access to the jail in retaliation for a previous negative newspaper story. There are currently three motions pending. Plaintiffs move to amend their complaint, seeking to add an equal protection claim. And the parties have filed cross motions for summary judgment on the First Amendment claim. Defendants' motion for summary judgment on count I is denied, and plaintiffs' motion for summary judgment on count I is granted. Plaintiffs' motion to amend is denied as moot.

## BACKGROUND

Marlan is a reporter for the Reader, a newspaper widely circulated in the Chicago area. Defendants are public officials responsible for operating the Cook County Department of Corrections (DOC). The DOC has a written policy encouraging media access to the jail. Pursuant to this policy defendants regularly admitted Marlan. She visited program areas,

interviewed inmates and spoke with jail personnel. She was denied access to the "Bullpen," a staging area where jail officials were allegedly strip-searching female (but not male) inmates. Marlan's research culminated in an article entitled "Strip Search," published by the Reader on March 8, 1998, discussing a class action lawsuit by a group of women against Sheahan and jail officials, alleging the strip search-policy violated their rights.

Following the strip-search article, Marlan began researching a story about a Chicago Legal Aid for Incarcerated Mothers (CLAIM) program for female inmates. She requested permission from the press office to observe a class. CLAIM classes are held in program areas – physical spaces within the jail where group activities are typically conducted. These are generally not accessible to the public, but accredited press members are routinely admitted. Marlan herself visited program areas while researching her strip-search story. This time Cunningham denied her request. The parties dispute the precise reason for this denial, but both concede it had something to do with what was included, or not included, in the strip-search article.

Defendants have offered Marlan alternate information sources about the CLAIM program. DOC officials have expressed willingness to answer questions by telephone; have provided an attendee list so Marlan could interview inmates involved; and have made a videotape of a class. But they will not allow Marlan to personally observe a class.

## DISCUSSION

We may only grant summary judgment if there are no genuine issues of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). This does not mean there must be absolutely no evidence supporting the non-moving party, but rather there is not enough to

support a reasonable jury verdict. *Id.* at 248.

I. Defendants' Motion

The parties offer competing formulations of the elements. Plaintiffs cite Seventh Circuit precedent defining retaliation claims brought by employees against public employers. *See, e.g.,* Kokkinis v. Ivkovich, 185 F.3d 840 (7th Cir. 1999); DeGuiseppe v. Village of Bellwood, 68 F.3d 187 (7th Cir. 1995). Defendants counter with cases from other circuits where, as here, there was no employment relationship between the parties. *See, e.g.,* Bloch v. Ribar, 156 F.3d 673 (6th Cir. 1998); Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1284 (9th Cir. 1999); Suarez Corp. Indus. v. McGraw, 202 F.3d 676 (4th Cir. 2000). We believe this is a distinction without a difference.

We begin by looking at the precise definitions courts have developed. The non-employee plaintiff must prove:

> (1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights.

Bloch, 156 F.3d at 678. By contrast, the Seventh Circuit employment cases explain:

> A public employee must demonstrate that he has suffered an adverse employment action motivated by the exercise of his right to free speech. ... And the complained-of action must be sufficiently adverse to present an actual or potential danger that the speech of employees will be chilled.

DeGuiseppe, 68 F.3d at 191 (citations omitted).[1] The parties do not quarrel with two of the

---

[1] There are additional requirements in employment cases, specifically that the speech must be on a matter of public concern and that the employee's interest in speech must be balanced against the defendant's interest in running an efficient office. *See* Pickering v. Bd. of Educ., 391 U.S. 563 (1968); Connick v. Myers, 461 U.S. 138 (1983). The Seventh Circuit has characterized these as sub-parts of the first retaliation element, namely that the speech in question is constitutionally protected. *See* Kokkinis, 185 F.3d at 843-44. Because the parties do not dispute that Marlan's speech was constitutionally protected, we need not concern ourselves

elements. DeGuiseppe's reference to free speech fits within Bloch's requirement of a constitutionally-protected activity. And both cases refer to the defendant's motivation as an element. Their disagreement focuses on the requisite level of harm: "likely to chill a person of ordinary firmness" versus "actual or potential danger that the speech ... will be chilled." We believe these are merely different ways of saying the same thing.

We find no instances where courts have drawn the distinction defendants emphasize. Courts discuss the unique attributes of the employment relationship in terms of the Pickering/Connick balancing test, *supra* n.1. But this affects whether the employee's speech is protected, not the level of harm she must show. To the contrary, the two lines of cases regularly cite each other and use language indicating that courts are using similar injury thresholds. Bloch itself quotes a Seventh Circuit employer retaliation case in its discussion of what constitutes an actionable injury. *See* Bloch, 156 F.3d at 679, *quoting* Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982). Recent dicta from the Seventh Circuit further suggests there is no critical distinction between the injury standards in employment and non-employment retaliation cases. "They are not, of course, even limited to employment. Any deprivation under color of law that is likely to deter the exercise of free speech, whether by an employee or anyone else, is actionable ... if the circumstances are such as to make such a refusal an effective deterrent to the exercise of a fragile liberty." Power v. Summers, 226 F.3d 815, 820 (7th Cir. 2000).

One distinction that we do find important is that in many of these cases the allegedly retaliatory act was itself speech. A public official cannot be held liable for exercising his own

---

with whether "protected speech" applies any differently in a non-employment context.

free speech rights. Similarly, we cannot enjoin him from speaking ill of plaintiffs. If defendants' speech becomes threatening or harassing, however, then it is not entitled to First Amendment protection. That is why courts so frequently use words such as "threatening," "harassing" or "intimidating" – to avoid a First Amendment catch-22. *See* Bloch, 156 F.3d at 679 (sheriff's disclosure of rape details not protected because intended to humiliate plaintiff); Suarez, 202 F.3d at 687 (emphasizing that "where a public official's alleged retaliation is in the nature of speech, in the absence of a threat, coercion, or intimidation ... such speech does not adversely affect a citizen's First Amendment rights"). Because defendants' alleged retaliatory acts here did not involve speech, plaintiffs need not show harassment or intimidation.

Ultimately, we must discern some meaningful standard from this array of cases. Because we find no meaningful distinction between the employment and non-employment cases, we will simply apply the ones from this circuit.² DeGuiseppe offers the most extensive discussion of the injury requirement.

> Under the law of this Circuit, retaliation need not be monstrous to be actionable under the First Amendment; it need merely create the potential for chilling employee speech on matter of public concern. 'A campaign of petty harassment may achieve the same effect as an explicit punishment.' 'Even minor forms of retaliation can support a first Amendment Claim, for they may have just as much of a chilling effect as more drastic measure.'

68 F.3d at 192 (citations omitted). The most recent Seventh Circuit statement on point reiterates that the action "must be sufficiently 'adverse' to deter the exercise of [plaintiffs'] rights." Power, 226 F.3d at 821. Just to emphasize how low this threshold can be, teasing an

---

² Because we find these cases sufficient, it would be improper to rely on the unpublished opinion defendants cite. *See* Davidian v. O'Mara, 2000 WL 377342 (6th Cir. Apr. 7, 2000); Sixth Circuit Rule 28(g). Moreover, the defendants in Davidian eventually permitted him to review the records in question. He sought damages for the delay. Here, defendants still refuse to provide Marlan access. The injury resulting from a short delay in access is qualitatively different from an ongoing violation.

employee for bringing a birthday cake to the office can be enough to state a retaliation claim. See Bart, 677 F.2d at 625 (noting "we cannot say as a matter of law that the exercise of First Amendment rights by public employees cannot be deterred by subjecting employees who exercise them to harassment and ridicule through selective enforcement of work rules."). Defendants' selective application of the press access policy certainly falls within this broad definition.

There is no factual dispute as to plaintiffs' injury. Defendants simply claim those injuries are not legally sufficient. We find denying Marlan access to the CLAIM program could chill someone's speech. The alternative sources defendants offered are not adequate substitutes for first-hand observations. Reporters frequently do resort to alternate sources when first-hand observations are not possible, but that in no way negates that actually being there is optimal. Plaintiff has provided evidence of this in the form of an affidavit from her editor and deposition testimony from a journalism expert. But the potential chilling effect is so obvious experts are hardly necessary. Interviewees may be more comfortable talking to someone who was physically in class with them. And a camera can never truly duplicate the live event. A reporter might well tone down a critical article if she feared that jail officials might terminate, or even restrict, her future access. That is exactly the type of chilling effect the First Amendment guards against.

Defendants also argue that because Marlan had no constitutional or statutory right to attend the CLAIM class, denying her access cannot be actionable. That is not an accurate statement of the law. The cases we have discussed amply demonstrate that denial of even discretionary perquisites, if motivated by plaintiffs' views, violates the First Amendment. See,

e.g., Power, 226 F.3d at 821 (finding denial of discretionary raise actionable). The DOC may not have had a legal obligation to admit Marlan. But it may not refuse to do so because she exercised her First Amendment rights.

II. Plaintiffs' Motion

Defendants concede that plaintiffs' speech was protected. And we have found that the undisputed injury is legally sufficient. The only remaining question is whether defendants were substantially motivated by plaintiffs' speech. Here, there is a very clear factual dispute. Plaintiffs contend that Marlan was punished because her article criticized DOC officials. Defendants maintain that they denied Marlan access to the CLAIM program because she deceived officials about her previous article.

For purposes of this motion we must accept defendants' version of the facts. They concede that another reporter would have been permitted to attend the CLAIM class as a matter of course. And that Marlan would have been granted access but for her article. Defendants assert that they denied Marlan access not because she criticized the sheriff, but because she misled them about the content of her article. This is still a content-based decision. Whether defendants took issue with the fact that she criticized the sheriff, or that she wrote about something other than what they expected, defendants clearly reacted to the content of Marlan's article. That violates the First Amendment.

Here, the distinction from the employment context becomes relevant. An employer can fire an employee for lying. Recall that under the Pickering/Connick test we must consider the employer's interest in maintaining an efficient office.[3] An employee who deceived her

---

[3] Although it seems to fit more naturally under the motivation prong of the test, rather than the protected speech element, the underlying basis for the balancing test seems to apply – maintaining an efficient workplace.

employer could obviously be very disruptive to the work environment. Reporters, however, may occasionally use deception in gathering information as necessary to their First Amendment function of revealing what government officials may not want the public to know. Clearly, this does not extend to the point where a reporter jeopardizes jail security. But admitting Marlan to the CLAIM class will not disrupt anything at the jail. Defendants do not claim that Marlan had violated prison rules, and concede they have no basis for believing she would do differently in the future. Nor do they claim that allowing her access will jeopardize security in any other way. They have, in effect, admitted their decision to refuse her access was content-based.

Because defendants' stated justification still violates the First Amendment, the factual dispute is immaterial. If Cunningham does not trust Marlan, he does not have to personally answer her questions. But defendants may not deny her a privilege accorded other reporters because she did not include positive programs in her article. They must admit her to the jail on the same terms as other reporters.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment on count I is denied, and plaintiffs' motion for summary judgment on count I is granted. Because we grant plaintiffs' requested relief under count I, their motion to amend is denied as moot.

JAMES B. MORAN
Senior Judge, U. S. District Court

April 2, 2001.